UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KEITH ROBERT ZIMMERMAN, | ) Case No. 1:18CV1233 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) <u>MEMORANDUM AND ORDER</u> |

Plaintiff Keith Robert Zimmerman ("Zimmerman" or "claimant") challenges the final

decision of Defendant Commissioner of Social Security ("Commissioner"), denying his

applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental

Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i),

423, 1381 *et seq*. ("Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  The case

is before the undersigned pursuant to the consent of the parties.  The issue before the court is

whether the final decision of the Commissioner is supported by substantial evidence and,

therefore, conclusive.  For the reasons set forth below, the Commissioner's final decision is

affirmed.

## I.  PROCEDURAL HISTORY

On September 23, 2015, Zimmerman filed his applications for a period of disability and

DIB, and for SSI benefits, alleging disability beginning March 11, 2014.  (R. 10, Transcript

("tr."), at 11, 205-211, 212-216, 231-243.)  Zimmerman's applications were denied initially and

upon reconsideration.  (R. 10, tr., at 11, 61-92, 93-130, 131-134, 135-137.)  Thereafter,

Zimmerman filed a request for a hearing before an administrative law judge ("ALJ").  (R. 10, tr., at 154-155.)

The ALJ held the hearing on September 28, 2017.  (R. 10, tr., at 28-60.)  Zimmerman appeared at the hearing, was represented by counsel, and testified.  (*Id.* at 30, 32-55.)  A vocational expert ("VE") attended the hearing and provided testimony.  (*Id.* at 30, 56-59.)  On November 6, 2017, the ALJ issued his decision, applying the standard five-step sequential analysis to determine whether Zimmerman was disabled.  (R. 10, tr., at 11-22; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a).)  The ALJ concluded Zimmerman was not disabled.  *Id.* at 21-22.

The Appeals Council denied Zimmerman's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.  (R. 10, tr., at 1-3.)  Zimmerman's complaint in this court seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing.  Zimmerman presents the following legal issue for the court's review: "The ALJ erred in relying on vocational expert testimony to fulfill his step 5 burden without even acknowledging post-hearing objections to the vocational expert's testimony."  (R. 13, PageID #: 868.)

## II.  PERSONAL BACKGROUND INFORMATION

Zimmerman was born in 1972, and was 41 years old on the alleged disability onset date.  (R. 10, tr., at 20, 32, 205, 231.)  Accordingly, he was considered a younger individual age 18-49 for Social Security purposes.  *See* 20 C.F.R. §§ 404.1563, 416.963.  Zimmerman has at least a high school education, and is able to communicate in English.  (R. 10, tr., at 20, 234, 236.)  He has past work as a machine operator and an industrial cleaner.  (R. 10, tr., at 56-57.)

## III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Zimmerman's brief alleging error by the ALJ.  As noted above, Zimmerman applied for a period of disability, DIB, and SSI benefits on September 23, 2015.  (R. 10, tr., at 11, 205-211, 212-216.)  His application listed the physical or mental conditions that limit his ability to work as: "Adhesive capsulitis of right and left shoulders; neck pain; shoulder pain; AC (acromioclavicular) arthritis; rotator cuff syndrome of right shoulder; numbness of the fingers, makes it difficult for grabbing; [and] depression."  *Id.* at 235.  The ALJ stated that claimant's primary allegations concerned limited use of his shoulders, arms, and hands.  *Id.* at 17; *see also id.* at 32, 39.

State agency reviewing psychologist, Karla Voyten, Ph.D., determined on January 8, 2016, that a medically determinable impairment was present that does not precisely satisfy the diagnostic criteria for Listing 12.04 (Affective Disorders) or 12.05 (Intellectual Disability).  (R. 10, tr., at 67, 81-82 (psychiatric review technique, "PRT").)  Under the "B" criteria for these Listings, Dr. Voyten assessed a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  *Id.* at 67.

Dr. Voyten also completed a mental residual functional capacity assessment. (R. 10, tr., at 71-73, 86-88.)  The doctor found that Zimmerman had "understanding or memory"

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

limitations, specifically, that he was moderately limited in his ability to understand and remember detailed instructions. *Id.* at 71. The claimant was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine with special supervision, and in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* at 72. Dr. Voyten also found that Zimmerman was moderately limited in his ability to respond appropriately to changes in the work setting, and in the ability to set realistic goals or make plans independently of others. *Id.*

On reconsideration, state agency reviewing psychologist, Janet Souder, Psy.D., determined on May 31, 2016, that a medically determinable impairment was present that does not precisely satisfy the diagnostic criteria for Listing 12.04 (Affective Disorders) only. Dr. Souder adopted Dr. Voyten's PRT findings for the "B" criteria for this Listing. (R. 10, tr., at 100-101, 118-119.) In addition, Dr. Souder's mental residual functional capacity assessment was identical to Dr. Voyten's assessment. *Id.* at 105-107, 123-125. Dr. Souder, however, added that claimant was able to understand and remember simple instructions. *Id.* at 106. Depression and chronic adjustment difficulties were identified, but claimant remained able to complete simple 2-3 step tasks without pressures from high productivity or pace expectations. *Id.* Dr. Souder opined that no social difficulties would be expected in a conventional work setting. *Id.*

Claimant's adaptation limitations are due to depression and distraction from his physical conditions. Dr. Souder stated that Zimmerman can adapt to a setting with routine work expectations and minor changes that can be explained when occurring. (R. 10, tr., at 107.)

State agency consulting physician Robert Wysokinski, M.D., completed a "Physical Residual Functional Capacity Assessment" on January 22, 2016. (R. 10, tr., at 68-71, 83-86.) Dr. Wysokinski determined Zimmerman was capable of light work (as defined in 20 CFR 416.967(b), that is, lifting no more than 20 pounds at a time, with frequent lifting of up to 10 pounds), with the ability to stand or walk about six hours, and the ability to sit about six hours, of an eight-hour workday. *Id.* at 68-69.

Zimmerman's ability to push or pull with his arms is limited, due to bilateral shoulder pain, with some muscle weakness, and decreased range of motion (R. 10, tr., at 69.) He can use right hand controls occasionally. *Id.* Dr. Wysokinski opined that Zimmerman can occasionally climb ramps or stairs; can never climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, or crouch, but never crawl. *Id.* These postural limitations were based on the same physical conditions. *Id.* In addition, Zimmerman was limited in his ability to reach overhead with either arm (never, with his right arm, but frequent with his left), and his gross and fine manipulation with his right hand was also limited. *Id.* at 70. Again, the doctor noted decreased range of motion in both shoulders, and some muscle weakness. *Id.* Dr. Wysokinski did not assess any visual or communicative limitations. *Id.* The claimant should never be exposed to unprotected heights hazardous machinery, or commercial driving. *Id.*

On reconsideration dated June 3, 2016, state agency reviewing physician Mehr Siddiqui, M.D., concurred with Dr. Wysokinski's residual functional capacity assessment that Zimmerman was capable of light work, with the ability to stand or walk about six hours, and the ability to sit about six hours, of an eight-hour workday. (R. 10, tr., at 103, 121-123.) Dr. Siddiqui opined that Zimmerman can frequently climb ramps or stairs; can never climb ladders, ropes, or scaffolds;

and can balance, stoop, kneel, or crouch without limits, and occasionally crawl. *Id.* at 103-104.

Dr. Siddiqui assessed the same manipulative and environmental limitations as Dr. Wysokinski.

*Id.* at 104-105.

Treating psychiatrist Robert Alcorn, M.D., completed a "Mental Status Questionnaire" on May 5, 2016. (R. 10, tr., at 474-476.) Dr. Alcorn assessed Zimmerman with a normal flow of conversation and speech, and a depressed mood and affect. *Id.* at 474. The psychiatrist did not note any signs or symptoms of anxiety or "thinking disorders". *Id.* Likewise, Dr. Alcorn did not indicate any issues with cognitive functioning or insight and judgment. *Id.* He diagnosed Zimmerman with mood disorder, due to his medical condition. *Id.* at 475. Dr. Alcorn indicated a fair response to medication, but a poor prognosis. *Id.* Dr. Alcorn's medical source statement did not indicate any limitation in claimant's ability to remember, understand, and follow directions; to maintain attention; to sustain concentration and persist in tasks; and, he did not describe any deficiencies in social interaction or adaptation. *Id.* Dr. Alcorn stated that Zimmerman "suffers some shoulder pain," and cannot do his former job, which is "very distressing." *Id.*

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the November 6, 2017, decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since March 11, 2014, the alleged onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: osteoarthritis, adhesive capsulitis of the right shoulder, depressive disorder, anxiety disorder, borderline

intellectual functioning, cubital tunnel syndrome, obesity (20 C.F.R. 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations. The claimant can frequently operate hand controls with the right hand. The claimant can frequently reach overhead on the left, but cannot reach overhead on the right. For all other reaching, the claimant can frequently reach bilaterally. The claimant can frequently handle and finger items with the upper left extremity. The claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot work near unprotected heights or near moving mechanical parts. The claimant cannot operate a motor vehicle. The claimant can perform simple, routine tasks, but not at a production rate pace. The claimant is limited to making simple, work-related decisions. The claimant can tolerate few changes in a routine work setting.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on *** 1972, and was 41 years old, which is defined a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from March 11, 2014, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 10, tr., at 13, 14, 16, 20, 21.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. §§ 404.1505(a), 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241,

245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

**VII. ANALYSIS**

Zimmerman presents a single legal issue for the court's review. He argues the "ALJ erred in relying on vocational expert testimony to fulfill his step 5 burden without even acknowledging post-hearing objections to the vocational expert's testimony." (R. 13, PageID #: 868.) After the hearing, claimant's counsel submitted a Post-Hearing Memorandum and Objections, dated October 16, 2017. (R. 10, tr., at 298-301.) Zimmerman contends that the ALJ improperly failed to consider the post-hearing arguments. (R. 13, PageID #: 868, 872.) He raises this as a due process issue, as well as arguing the merits of his objections. The court will address these issues in turn.

At the fifth step of the sequential analysis, the ALJ determines whether, based on the claimant's residual functional capacity ("RFC"), as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Wilson*, 378 F.3d at 548. A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).[2] The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20

---

[2] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, *the claimant's RFC*, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

C.F.R. § 404.1546(c).  While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner.  *Wilson*, 378 F.3d at 548; *Walters*, 127 F.3d at 529.

Social Security Ruling ("SSR") 00-4p provides that, pursuant to 20 CFR §§ 404.1566(d) and 416.966(d), the agency takes administrative notice of "reliable job information" available from various publications, including the *Dictionary of Occupational Titles* ("DOT ").  SSR 00-4p, 2000 WL 1898704, at *2.  The SSR states that, in making disability determinations, the agency relies primarily on the DOT for information about the requirements of work in the national economy, at steps 4 and 5 of the sequential process.  *Id.*  The ALJ "may also use VEs . . . at these steps to resolve complex vocational issues."  *Id.*

Concerning the use of vocational experts, the regulations provide:

If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist.  We will decide whether to use a vocational expert or other specialist.

20 C.F.R. § 404.1566(e).  It is clear from the regulations that the use of a vocational expert, although undeniably common, is a discretionary decision for the ALJ, in a situation involving consideration of whether the claimant can use his skills in "other work," or a similarly complex issue.  *Id.*

An ALJ can rely on the testimony of a vocational expert identifying specific jobs available in the economy that an individual with the claimant's limitation(s) could perform as substantial evidence supporting an ALJ's finding that the claimant can perform other work. *Wilson*, 378 F.3d at 549; *Roberts v. Commissioner*, No. 2:18CV541, 2019 WL 4023549, at *6

(S.D. Ohio Aug. 26, 2019) (quoting *Wilson*). An ALJ complies with agency policy by asking whether there is any discrepancy between the VE's opinions and the DOT requirements for the jobs identified. *Beinlich v. Commissioner*, No. 08-4500, 2009 WL 2877930, at *4 (6th Cir. Sept. 9, 2009) (citing SSR 00-4p); *Lindsley v. Commissioner*, 560 F.3d 601, 605-606 (6th Cir. 2009).

The Sixth Circuit has stated that "the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p." *Beinlich*, 2009 WL 2877930, at *4 (citing *Lindsley*, 560 F.3d at 606); *see also Martin v. Commissioner*, No. 04-4551, 2006 WL 509393, at *5 (6th Cir. Mar. 1, 2006) (ALJ does not have duty to conduct independent investigation into VE's testimony); *Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394, at *12-*13 (N.D. Ohio June 8, 2017), *adopted by* 2017 WL 2720332 (N.D. Ohio June 23, 2017) (quoting *Beinlich*). Rather, the *Beinlich* court continued: "This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT." *Beinlich*, 2009 WL 2877930, at *4 (citing *Ledford v. Astrue*, No. 07-4234, 2008 WL 5351015, at *10 (6th Cir. Dec. 19, 2008)); *Parrish*, 2017 WL 2728394, at *12.

In the decision here, the ALJ determined that, considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (R. 10, tr., at 21.) In support, the ALJ stated that claimant's ability to perform the full range of light work was impeded by his limitations, and:

> To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as office helper (DOT 239.567-010), an information clerk (DOT 237.367-018), and a garment sorter (DOT 227.687-014).

(R. 10, tr. at 21.)  The ALJ determined, pursuant to SSR 00-4p, that the VE's testimony was

consistent with the information contained in the DOT.  *Id.*; *see also id.* at 58-59 (asking the VE

to advise if the testimony was not consistent with or addressed by the DOT.)  Therefore, based

on the testimony of the VE, the ALJ concluded that Zimmerman was capable of making an

adjustment to the other work that exists in significant numbers in the national economy, and a

finding of "not disabled" was appropriate.  *Id.* at 21.

### A.  Procedural Due Process

Following the ALJ's hearing, claimant's counsel submitted a Post-Hearing Memorandum

and Objections.  (R. 10, tr., at 298-301.)  As Zimmerman frames his argument,

> . . . despite Plaintiff's constitutional and statutory right to have the objections
> considered and ruled upon, the ALJ did not acknowledge or address the
> objections memorandum <u>at all</u>, even though it was clearly contained within the
> record at the time of the decision.

(R. 13, PageID #: 872, emphasis in original.)  Zimmerman contends that "it is critical to recall

that the ALJ denied benefits at step 5 of the sequential evaluation, where <u>the Agency</u> has the

burden of proof to demonstrate that there is other work he can perform."  *Id.* (emphasis in

original.)  The ALJ, according to Zimmerman, failed to address his objection to the VE's

testimony "regarding how the jobs the VE identified (and which were relied upon by the ALJ to

deny benefits) are <u>currently</u> performed in the national economy."  *Id.* at 873 (emphasis in

original.)

Zimmerman asserts that the ALJ must consider all the evidence in the record, and must

rule upon objections to the VE's testimony.  (R. 13, PageID #: 873.)  He claims that he has

"constitutional and statutory rights" to challenge evidence put forward by a testifying expert,

such as a VE.  *Id.* at 874.  When a claimant raises objections about a VE's opinion, Zimmerman

contends, the ALJ is obligated to rule on the objection, whether at the hearing, or in the decision. *Id.*, citing Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-6-74(B) and I-2-5-30(B) (2016). The claimant argues that courts have ruled that an ALJ's failure to adequately address objections to VE testimony is error requiring remand because it undermines the step 5 finding that there is other work the claimant can do, and precludes meaningful review. *Id.* at 875, citing *Cunningham v. Astrue*, 360 Fed. Appx 606, 615 (6th Cir. 2010), and other cases (outside the Sixth Circuit).

*Cunningham* did not concern an obligation to consider a claimant's post-hearing objections. *See generally Cunningham*, 360 Fed. Appx 606. Rather, the claimant in *Cunningham* disputed the ALJ's finding that claimant could perform other jobs existing in significant numbers in the economy. *Cunningham*, 360 Fed. Appx at 614-615; *see also Cunningham v. Astrue*, No. 1:06CV1418, 2008 WL 9463972, at *1, *12 (N.D. Ohio Feb. 25, 2008), adopted by, 2008 WL 9463969 (N.D. Ohio Apr. 30, 2008). That issue goes to the merits of the claimant's objection concerning the vocational evidence, addressed in the section below, and not to the alleged procedural error.

Zimmerman asserts that he is entitled to present evidence and to confront the evidence against him, by cross-examining the vocational expert. (R. 13, PageID #: 874.) The ALJ held a hearing on September 28, 2017, at which Zimmerman was able to present evidence. (R. 10, tr., at 28-60.) At the hearing, counsel for Zimmerman stipulated to the VE's qualifications to testify. (R. 10, tr., at 56.) Counsel questioned the VE concerning the ALJ's hypothetical questions. *Id.* at 58-59. Counsel made a brief closing statement, but did not ask for the record to remain open for additional evidence, nor did counsel object to the VE's testimony during the hearing. *Id.* at

14

58-59; *see also id.*, at 30-31. Zimmerman, therefore, had the opportunity to present evidence and cross-examine the vocational expert.

The failure to object to evidence, or failure to cross-examine a VE about a topic at the hearing, precludes the claimant from later raising the issue. *Robberts*, 2019 WL 4023549, at *6, *8; *Patterson v. Saul*, No. 3:18-0641, 2019 WL 4237854, at *9 (M.D. Tenn. Aug. 2, 2019), adopted by, 2019 WL 4237855 (M.D. Tenn. Aug. 23, 2019); *Stamper v. Commissioner*, No. 1:18CV697, 2019 WL 2437813, at *8-*9 (N.D. Ohio May 8, 2019), adopted by, 2019 WL 2437016 (N.D. Ohio June 11, 2019) (quoting *Kidd v. Berryhill*, No. 5:17CV420, 2018 WL 3040894, at *6 (E.D. Ky. June 19, 2018) (citing cases)); *Carter v. Commissioner*, No. 2:14CV244, 2014 WL 4987419, at *9 (S.D. Ohio Oct. 6, 2014). Nonetheless, the claimant argues that the ALJ's failure to address post-hearing objections to the VE's testimony is error.

Regarding his post-hearing brief, Zimmerman has not shown that the ALJ violated a due process obligation imposed by the HALLEX Manual. *See* R. 13, PageID #: 874, citing, *inter alia*, HALLEX § I-2-6-74(B). The Southern District of Ohio has rejected a similar argument, ruling:

> Nor has Plaintiff shown that the ALJ violated a legal obligation set out by the SSA's Hearings, Appeals and Litigation Law ("HALLEX") manual, which, Plaintiff contends, "embodies the principles of procedural due process found in the Constitution and the Administrative Procedure Act." (Pl.'s Reply, at p. 2; see also Pl.'s Brief, at p. 4, n.2.) Plaintiff points to HALLEX § I-2-6-74(B)3 which provides that at the hearing the ALJ must ask the claimant's representative if she has any objections to the VE's testimony and if so, must rule on any objections either "on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision." HALLEX § I-2-6-74(B). In this case, Plaintiff did not raise the objections to the VE's testimony until after the hearing. As such, this HALLEX provision does not apply.

*Jones v. Commissioner*, No. 2:17CV1062, 2019 WL 2511111, at *8 (S.D. Ohio June 18, 2019), adopted by, 2019 WL 3086255 (July 12, 2019) (citing *Horner v. Berryhill*, No. 17C4823, 2018 WL 1394038, at *2 (N.D. Ill. Mar. 20, 2018) ("Because HALLEX does not compel an ALJ to rule on objections to VE testimony posed after a hearing has ended, the ALJ's failure to do so in this case was not erroneous."); *Owens v. Berryhill*, 17CV4824, 2018 WL 3303274, at *2 (N.D. Ill. July 5, 2018) ("Here [plaintiff] did not raise the relevant objections to the VE's testimony until after the hearing, so the cited HALLEX provision does not apply."); *Rockholt v. Berryhill*, No. CIV-17-578, 2018 WL 4462231, at *7 (W.D. Okla. Sept. 18, 2018) (collecting cases)); *see also Robberts*, 2019 WL 4023549, at *7 (quoting *Jones*); *Patterson*, 2019 WL 4237854, at *4-*9 (extensive discussion, citing cases).

In any event, HALLEX is an agency procedural manual that is not binding on the courts. *See, e.g.*, *Bowie v. Commissioner*, 539 F.3d 395, 399 (6th Cir. 2008); *Robberts*, 2019 WL 4023549, at *7 (HALLEX does not have force of law, citing cases); *Patterson*, 2019 WL 4237854, at *8 (HALLEX procedures do not create federal due process rights). "HALLEX does not impose judicially enforceable duties on either the ALJ or this court." *Robberts*, 2019 WL 4023549, at *7 (quoting *Morris v. Comm'r of Soc. Sec.*, No. 1:11CV154, 2012 WL 4953118, at *12 (W.D. Mich. Oct. 17, 2012)).

Zimmerman has not provided jurisprudence that supports his argument that the ALJ had an obligation to explicitly address his post-hearing objections to the VE's testimony. Indeed, courts have rejected this argument. *See generally Robberts*, 2019 WL 4023549, at *7; *Patterson*, 2019 WL 4237854, at *4-*9; *Jones*, 2019 WL 2511111, at *8; *Owens*, 2018 WL 3303274, at *2; *Horner*, 2018 WL 1394038, at *2; *Rockholt*, 2018 WL 4462231, at *7; *but see Westmoreland v.*

*Berryhill*, No. 3:17CV0096, 2018 WL 1522118 (S.D. Ohio Mar. 28, 2018) (contra). The court finds no error here and will not remand the decision on that basis.

B. Vocational Evidence

Although the court has not found procedural error, Zimmerman's alleged due process error, even if found persuasive, would amount to harmless error because his objections to the vocational evidence relied on by the ALJ fail. Claimant contends that the jobs identified by the VE at the hearing "are no longer performed at the unskilled level pursuant to current labor market data," and thus exceed the limitations included in the hypothetical RFC assessment. (R. 10, tr., at 299.)

SSR 00-4p states that the agency takes administrative notice of "reliable job information" available from various publications, including the DOT. SSR 00-4p, 2000 WL 1898704, at *2. The SSR also indicates that, in making disability determinations, the agency relies primarily on the DOT for information about the requirements of work in the national economy, at steps 4 and 5 of the sequential process. *Id.* The ALJ "may also use VEs . . . at these steps to resolve complex vocational issues." *Id.*

An ALJ can rely on the testimony of a VE identifying specific jobs available in the economy that an individual with the claimant's limitations could perform as substantial evidence supporting an ALJ's finding that the claimant can perform other work. *Wilson*, 378 F.3d at 549; *Roberts*, 2019 WL 4023549, at *6. An ALJ complies with agency policy by asking whether there is any discrepancy between the VE's opinions and the DOT requirements for the jobs identified. *Beinlich*, 2009 WL 2877930, at *4 (citing SSR 00-4p); *Lindsley*, 560 F.3d at 605-606.

The crux of Zimmerman's argument is that the jobs identified by the VE at the hearing "are no longer performed at the unskilled level pursuant to current labor market data." (R. 13, PageID #: 877; R. 10, tr., at 299.) He asserts that the ALJ and the vocational expert must rely upon "up-to-date and reliable" vocational information. (R. 13, PageID #: 877, citing 20 C.F.R. §1566(d) and SSR 00-4p.) In addition, claimant contends that "the Department of Labor Statistics reports job numbers by Standard Occupational Classification Codes (SOC), and the current source for job information for SOC Codes is not the DOT, but O*Net..." (R. 13, PageID #: 877; R. 10, tr., at 299-300.) Zimmerman asserts that the jobs identified by the VE exceed his RFC because they are performed differently in today's workforce than described in the DOT. (R. 13, PageID #: 878.) He also implies that, had the ALJ and VE properly used O*Net as the source of current vocational information, the result would have been a finding that the jobs identified by the VE are not actually unskilled jobs that could accommodate his mental limitations. *Id.* at 879. He complains further that he was not provided the opportunity to address the inconsistency directly with the vocational expert. *Id.* (The alleged procedural error has been addressed above and found meritless.)

In determining what work exists in the national economy, the ALJ and the VE are guided by the regulations, which provide "we will take administrative notice of reliable job information available from various governmental and other publications," such as the Dictionary of Occupational Titles. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (2017); *see, e.g.*, *Kyle v. Commissioner*, 609 F.3d 847, 855 (6th Cir. 2010). The regulations do not provide that administrative notice may be provided to O*Net, which in fact is not mentioned at all. *See generally* 20 C.F.R. §§ 404.1566(d), 416.966(d) (2017).

In addition, SSR 00-4p states that administrative notice will be taken of "reliable job information" available from various publications, including the DOT.  SSR 00-4p, 2000 WL 1898704, at *2; *see, e.g., Lindsley*, 560 F.3d at 603 (citing SSR 00-4p).  The SSR specifically states:

> In making disability determinations, we rely <u>primarily</u> on the DOT (including its companion publication, the SCO [Selected Characteristics of Occupations]) for information about the requirements of work in the national economy.  We use these publications at steps 4 and 5 of the sequential evaluation process.  We may also use VEs . . . at these steps to resolve complex vocational issues.

*Id.* (emphasis added).  The SSR states that occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT.  *Id.* Again, SSR 00-4p does not provide that administrative notice may be provided to O*Net.  *See generally* SSR 00-4p, 2000 WL 1898704.  Therefore, Zimmerman's claim that the ALJ and VE were required to obtain job information from O*Net is not supported by reference to the administrative sources he cites.  *See* R. 13, PageID #: 877, citing 20 C.F.R. § 1566(d) and SSR 00-4p.

Zimmerman relies as well on several cases that he contends support his argument.  The only Sixth Circuit case he cites in support of his specific argument on current vocational information is *Cunningham*, 360 Fed. Appx 606.  (R. 13, PageID #: 875, 880.)  The claimant in *Cunningham* contended that substantial evidence did not support the ALJ's finding that claimant could perform other jobs existing in significant numbers in the economy.  *Cunningham*, 360 Fed. Appx at 614-615; *see also Cunningham*, 2008 WL 9463972, at *1, *12.  The Sixth Circuit panel majority in *Cunningham*, over a dissent, stated:

> While the Social Security Commissioner does take administrative notice of [the DOT] when determining if jobs exist in the national economy, 20 C.F.R. §404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted.

*Cunningham*, 360 Fed. Appx at 615. Although the panel relied upon "common sense," it did not reference other authority for this proposition. *See Robberts*, 2019 WL 4023549, at *10 ("*Cunningham* cited no legal authority" in departing from "typically deferential, substantial-evidence review"); *Kidd*, 2018 WL 3040894, at *8. The panel went on to decide:

> In light of the fact that more current job descriptions were available at the time of the hearing before the ALJ — the Department of Labor replaced the DOT with the Occupational Information Network (O*NET), a database that is continually updated based on data collection efforts that began in 2001 — and that the two descriptions relied on by the VE are not found in O*NET, we conclude that the VE's dependence on the DOT listings alone does not warrant a presumption of reliability.

*Cunningham*, 360 Fed. Appx at 616.

Zimmerman also cites *Sams v. Berryhill*, a Florida case which quotes *Cunningham*. (R. 13, PageID #: 879, citing *Sams v. Berryhill*, No. 1:17CV15, 2017 WL 3974239 (N.D. Fla. Sept. 8, 2017).) In *Sams*, the district court reasoned that, because the ALJ is allowed to "take administrative notice of reliable job information available from various other governmental and other publications, 20 C.F.R. § 404.1566(d)," therefore, "[r]eliance on the O*NET is not improper and, because the information contained in it is more current than the DOT, it is not obsolete and may be found to be more reliable than the DOT in certain cases." *Sams*, 2017 WL 3974239, at *8.

Both *Cunningham* and the *Sams* case from Florida are unpublished. The rule in the Sixth Circuit is that unpublished decisions are not binding precedent. *United States v. Yates*, 866 F.3d 723, 728 (6th Cir. 2017) (citing *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002)); *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 283 (6th Cir. 2016); *United States v. Williams*, 15 F.3d 1356, 1363 n.6 (6th Cir. 1994). Perhaps unsurprisingly, Zimmerman does not provide, and the

court has been unable to locate, another Sixth Circuit decision adopting the 2010 *Cunningham* decision's approach.  *See generally Robberts*, 2019 WL 4023549, at *9 (citing cases questioning *Cunningham*).  Absent direct controlling authority, this court must consider the prevailing view in the Sixth Circuit.

The Sixth Circuit generally requires an ALJ to adhere to agency rules and regulations, when the regulations are specific to considering a particular issue.  *See, e.g.*, *Miller v. Commissioner*, 811 F.3d 825, 833 (6th Cir. 2016) (citing *Gentry v. Commissioner*, 741 F.3d 708, 722 (6th Cir. 2014)); *Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013); *see also Wolf Creek Collieries v. Sammons*, No. 02-3528, 2005 WL 1385936, at *2 (6th Cir. June 9, 2005) (common sense might dictate a certain result, but "the regulations do not permit it."); *Hall v. Colvin*, No. 3:14CV01097, 2016 WL 254633, at *20 (M.D. Tenn. Jan. 19, 2016), adopted by, 2016 WL 465494 (M.D. Tenn. Feb. 8, 2016) (despite conclusion which might be compelled by common sense, the ALJ's decision must be based on regulatory factors).

Another court in this circuit has rejected the argument that a failure to consult O*NET is error:

> . . . while the DOT appears on the list of publications from which the agency can take "administrative notice of reliable job information," the O*NET does not.  *See* 20 C.F.R. §§ 404.1566(d)(1)-(5), 416.966(d)(1)-(5). The ALJ was not required to accept the occupational information contained in the "O*NET Online" or any particular source.  Under the regulations, an ALJ is authorized "to use a vocational expert or other specialist" and to "take administrative notice of reliable job information available from governmental and other publications." 20 C.F.R. §§ 404.1566(d)-(e), 416.966(d)-(e).  Accordingly, the failure to consult the O*NET does not constitute error.

*Rollston v. Commissioner*, No. 1:16CV168, 2016 WL 6436676, at *5 (W.D. Mich. Nov. 1, 2016); *see also Snow v. Commissioner*, No. 5:14CV1861, 2015 WL 4507271, at *20 (N.D. Ohio

July 24, 2015) ("no requirement that the VE's testimony be consistent with O*NET").  Other

courts have pointed out that, whatever the DOT's deficiencies may be, the agency continues to

rely on it:

> . . . the Occupational Information Network ("O*NET") ... superceded the DOT as
> the federal government's primary source of occupational information in 1999.
> Although considered obsolete by most other federal agencies, the DOT continues
> to be used extensively by the Social Security Administration, although plans to
> replace the DOT as the Administration's primary vocational reference source are
> underway.  *See* 73 Fed.Reg. 78864 (Dec. 23, 2008).  In the meantime, however,
> SSR 00-4p continues to require consistency between vocational expert testimony
> and the DOT.

*Ricard v. Astrue*, 1:09-0008, 2009 WL 5031317, *9 (M.D. Tenn. Dec.14, 2009); *see also*

*Robberts*, 2019 WL 4023549, at *9 (SSA still relies on DOT, citing cases).

Moreover, "[a]lthough *Cunningham* suggested that the particular DOT job descriptions at

issue . . . may have been obsolete, it did not hold that the DOT is an unreliable or out-of-date

source."  *Earls v. Commissioner*, No. 1:09 CV 01465, 2011 WL 3652435, at *7 (N.D. Ohio Aug.

19, 2011); *see also Robberts*, 2019 WL 4023549, at *9 (quoting *Earls*).  The *Earls* court

continued: "Although the [job] descriptions [in dispute] contained in the O*NET are more

expansive than those in the DOT, they do not raise doubts as to the reliability of the DOT

descriptions.  *Id.*

The ALJ was entitled to rely on the testimony of the VE identifying specific jobs

available in the economy that an individual with the claimant's limitations could perform.  That

testimony constitutes substantial evidence supporting the ALJ's finding that the claimant can

perform other work. *See*, *e.g.*, *Wilson*, 378 F.3d at 549; *Robberts*, 2019 WL 4023549, at *6.

Therefore, the court finds that the RFC, as well as the ALJ's finding that Zimmerman was not

disabled are supported by substantial evidence.

## VIII.  CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on substantial

evidence in the record.  Accordingly, that decision is AFFIRMED.


<u>s/ David A. Ruiz</u>
David A. Ruiz
United States Magistrate Judge


Date:  <u>September 27, 2019</u>